In re MISSOURI PAC. R. CO.

THOMPSON v. TERMINAL SHARES, Inc., et al.

No. 6935.

District Court, E. D. Missouri, E. D. Sept. 27, 1938.

Jerome N. Frank, of New York City, and Ernest A. Green, of St. Louis, Mo., for plaintiff.

Samuel B. Jeffries, Arthur E. Simpson, and Paul F. Plummer, all of St. Louis, Mo., for defendant Benjamin F. Edwards.

James S. Simrall and Henry L. Jost, both of Kansas City, Mo., for defendants North Kansas City Bridge & R. Co., North Kansas City Development Co., Parkside Land Co., Guinotte Land Co., Kansas City Ferry Co., and North Kansas City Land & Improvement Ass'n.

Godfrey Goldmark, of New York City, I. N. Watson, Elton L. Marshall, and Henry N. Ess, all of Kansas City, Mo., and Edwin J. Bean, of St. Louis, Mo., for defendant Guaranty Trust Co. of New York.

R. L. Douglas and Brown, Douglas & Brown, all of St. Joseph, Mo., for defendants Union Terminal Ry. Co. and St. Joseph Belt Ry. Co.

William B. Cockley, of Cleveland, Ohio, and Emmet T. Carter, of St. Louis, Mo., for defendants John P. Murphy, Henry A. Marting and John J. Murray, trustees, etc.

William B. Cockley, of Cleveland, Ohio, and Emmet T. Carter, of St. Louis, Mo., for defendant Alleghany Corporation.

Godfrey Goldmark, of New York City, I. N. Watson, Elton L. Marshall, and Henry N. Ess, all of Kansas City, Mo., and E. J. Bean, of St. Louis, Mo., for defendant Marine Midland Trust Co.

William B. Cockley, of Cleveland, Ohio, and Emmet T. Carter, of St. Louis, Mo., for defendant Terminal Shares, Inc.

Godfrey Goldmark, of New York City, I. N. Watson, Elton L. Marshall, and Henry N. Ess, of Kansas City, Mo., and E. J. Bean, of St. Louis, Mo., for defendant Douglass & Co.

MOORE, District Judge.

Guy A. Thompson, Trustee for Missouri Pacific Railroad Company, a corporation, commenced this action, which is termed "An Ancillary Dependent Bill in Equity" to enforce an equitable lien for injunction and other relief, filing such bill on June 24, 1936, in the reorganization proceedings of the Missouri Pacific Railroad pending in this court.

The bill alleges that four certain contracts between Missouri Pacific Railroad Company and the defendant Terminal Shares, Inc., are invalid and not binding upon either the Missouri Pacific or plaintiff, for the reason that the contracts were (a) not submitted to and approved by the Interstate Commerce Commission as required by the Acts of Congress regulating interstate commerce, 49 U.S.C.A. § 1 et seq.; (b) not submitted to and approved by the Missouri Public Service Commission; (c) fraudulent and unfair as to price; (d) ultra vires; and (e) in violation of Section 10 of the Clayton Act, 15 U.S.C.A. § 20.

The property which was the subject matter of these contracts, and which Terminal Shares, Inc., agreed to sell and Missouri Pacific Railroad Company agreed to purchase, was certain capital stock of defendant Union Terminal Railway Company, together with open accounts of said company; certain stock of defendant St. Joseph Belt Railway Company; certain promissory notes of defendant North Kansas City Development Company; preferred stock of defendant North Kansas City Bridge & Railroad Company; certain promissory notes of defendant Union Depot Bridge & Railroad Company; and certain capital stock of defendants North Kansas City Development Company, Parkside Land Company, Guinotte Land Company, Kansas City Ferry Company and North Kansas City Land & Improvement Association. Pursuant to the terms of

these contracts, Missouri Pacific paid $3,-200,000 toward the purchase price.

The property, the subject of the contracts, is owned by defendant Terminal Shares, Inc., subject to certain liens and encumbrances. Terminal Shares, Inc., and John P. Murphy, Henry A. Marting and John J. Murray, as Trustees of Terminal Shares Trust, entered into a collateral trust agreement with Guaranty Trust as Trustee under date of January 1, 1931, under which the indebtedness and shares of stock described in said contracts was pledged, subject to said contracts, to secure the payment of $16,000,000 aggregate principal amount of 5½ per cent. gold notes of Terminal Shares, Inc. Under date of July 18, 1933, Guaranty Trust Company resigned as trustee under the aforementioned trust agreement and Marine Midland Trust Company was appointed as successor trustee. Guaranty Trust Company is also trustee under three indentures between defendant Alleghany Corporation and Guaranty Trust Company.

The 5½ per cent. gold notes of Terminal Shares, described above, were purchased by Alleghany Corporation, which, in turn, pledged them as security under the three foregoing indentures between Alleghany Corporation and Guaranty Trust Company.

Douglass & Company is the record owner of the capital stock which was the subject of the four contracts and holds the same as the agent and nominee of Guaranty Trust Company.

Plaintiff states that he is entitled to a return of the moneys which were paid out by the Missouri Pacific; that he has an equitable lien for these moneys on the property which is the subject of the contracts, and he prays that the court foreclose the alleged lien, that the property be sold and the proceeds thereof be applied to the satisfaction of such lien; that the defendants account to the plaintiff for all sums due to plaintiff because of their participation in the transactions surrounding the four contracts and pay to plaintiff such sums as may be found to be due upon such accounting; that an injunction issue pending the final determination of this cause, enjoining the defendants from selling or disposing of the shares of stock and the other property forming the subject-matter of the contracts; that an injunction issue against each of the Missouri corporations,

enjoining and restraining them from transferring the shares of stock and open accounts forming the subject-matter of the contracts; and generally for the enforcement of any other right or claim to which plaintiff may be entitled by reason of the facts alleged in the bill.

It affirmatively appears from the allegations of the bill that the Missouri Corporations, the shares of stock, accounts and notes of which constitute the subject-matter of the contracts, are domiciled and located without this judicial district; and it does not appear from the allegations of the bill that any of the property affected by the suit is located within the Eastern Judicial District of Missouri.

This suit seeks relief in personam by way of an accounting from defendants, all of whom are non-residents of this district. It seeks relief in rem by way of the foreclosure of an alleged equitable lien, as to property entirely outside this district, consisting of shares of stock and other obligations of Missouri corporations domiciled and doing business outside of this district and represented by certificates and notes not physically present within the district.

On June 26, 1936, this Court, upon the application of plaintiff ex parte, entered an order directing that service of subpoena be made upon the defendants in the various districts of their residence, all of the defendants being non-residents.

The defendants, non-residents of the district, on special appearances filed their separate motions for the vacation of the order for service and for quashing the service of process made upon these defendants beyond the territorial jurisdiction of this court.

Plaintiff claims that he has a vendee's lien, and that this court has jurisdiction to enforce same, to grant injunctions and other relief; and he further avers that even if no vendee's lien exists, this court would still have jurisdiction of the ancillary dependent bill in equity, since this court has jurisdiction of the property of the Debtor, and a chose in action is property within the meaning of Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205.

Plaintiff concedes that this court has no jurisdiction to enforce the vendee's lien due to the provisions of Section 57 of the United States Judicial Code, 28 U.S.C.A. § 118.

7

Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, contains the following phraseology:

"If the petition is so approved, the court in which such order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located."

Section 77, as amended August 27, 1935, also contains the following provision:

"Process of the court shall extend to and be valid when served in any judicial district."

The question before the court is whether this court obtained jurisdiction, by extraterritorial service of process, in a plenary suit in equity brought by a trustee to recover a money judgment and for other relief purely in personam against defendants who are not parties to the proceedings in reorganization and who dispute the validity of the trustee's claim.

Subdivision (*l*) of Section 77, 11 U.S. C.A. § 205(*l*), provides:

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

In an ordinary bankruptcy proceeding the title and right to possession of all property owned and possessed by the bankrupt vests in the trustee no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U.S. 254, 33 S.Ct. 854, 57 L. Ed. 1174; Wells & Co. v. Sharp, 8 Cir., 208 F. 393; Galbraith v. Robson-Hilliard Grocery Co., 8 Cir., 216 F. 842; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. But if a bankruptcy trustee desired to bring a suit similar to the one at bar, he would have had to bring a plenary suit and would not have been able to institute a summary proceeding in the bankruptcy court, because the bankruptcy court would not have summary jurisdiction over such a cause against these adverse claimants.

"It is well settled that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant; but resort must be had by the trustee to a plenary suit." Harrison v. Chamberlin, 271 U.S. 191, loc. cit. 193, 46 S.Ct. 467, loc. cit. 468, 70 L.Ed. 897. And the bankruptcy trustee, in bringing a plenary suit, would have to comply with Section 23 of the Bankruptcy Act (Title 11 U.S.C.A. Section 46) which provides:

"Section 23 [§ 46]. *Jurisdiction of United States and State courts.* (a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants."

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under Section Sixty, subdivision b; Section Sixty-seven, subdivision e; and Section Seventy, subdivision e [section 96, subdivision b, of this title; section 107, subdivision e, of this title, and section 110, subdivision e, of this title]."

Mr. Justice Gray, speaking for the court in Bardes v. First Nat. Bank of Hawarden, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175, discussing the purpose of Congress in enacting Section 23, said [page 1005]:

"The bankrupt acts of 1867 and 1841, as has been seen, each contained a provision conferring in the clearest terms on the circuit and district courts of the United States concurrent jurisdiction of suits at law or in equity between the assignee in bankruptcy and an adverse claimant of property of the bankrupt. We find it impossible to infer that when Congress, in framing the act of 1898, entirely omitted any similar provision, and substituted the restricted provisions of § 23 [11 U.S.C.A.

§ 46], it intended that either of those courts should retain the jurisdiction which it had under the obsolete provision of the earlier acts.

"On the contrary, Congress, by the 2d clause of § 23 of the present bankrupt act, appears to this court to have clearly manifested its intention that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the district courts of the United States, 'unless by consent of the proposed defendant,' of which there is no pretence in this case.

"One object in inserting this clause in the act may well have been to leave such controversies to be tried and determined, for the most part, in the local courts of the state, to the greater economy and convenience of litigants and witnesses."

A trustee in bankruptcy, therefore, would have to comply with Section 23, 11 U.S.C.A. § 46, and could have brought the instant suit only in that court in which the Missouri Pacific could have sued these defendants had bankruptcy not intervened. Bush v. Elliott, 202 U.S. 477, 26 S.Ct. 668, 50 L.Ed. 1114; Bardes v. First Nat. Bank of Hawarden, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175; Kelley v. Gill, 245 U.S. 116, 38 S.Ct. 38, 62 L.Ed. 185.

Had the Missouri Pacific, or bankruptcy trustee, brought suit in the Eastern District of Missouri, the Federal Court could not, sitting in equity, issue its process extraterritorially. Robertson v. Labor Board, 268 U.S. 619, loc. cit. 622, 45 S.Ct. 621, 69 L.Ed. 1119.

The provisions of the Bankruptcy Act, being applicable to proceedings under Section 77 by the provisions of subdivision (l) of said Section, 11 U.S.C.A. § 205(l), the question arises whether any provision of Section 77 adds to the jurisdiction of the bankruptcy court, or removes the limitations provided in Section 23, 11 U.S.C.A. § 46.

Plaintiff contends that it is wholly immaterial as to the jurisdictional point, whether plaintiff had pleaded facts entitling him to a vendee's lien or otherwise, as the court would still have jurisdiction of the chose in action for an accounting pleaded and of the injunction sought, and he cites as supporting authority the case of Thomas v. Winslow, D.C., 11 F.Supp. 839. The Thomas-Winslow Case was one arising under Section 77B, 11 U.S.C.A. § 207, which said Section also has a provision that during the pendency of the proceedings under such section the court shall have exclusive jurisdiction of the debtor and his property wherever located, for the purposes of the section. In that case, Judge Rippey, in his opinion, discussing the contention made by defendants that the jurisdiction of the court must be limited to the issuance of process within its local territorial jurisdiction, said [page 841]:

"There seems to be no case in which this precise question has been passed upon since sections 77A and 77B were added to the Bankruptcy Law [11 U.S.C.A. §§ 206, 207]. If it were necessary to decide that question here, it would seem that the jurisdiction of the court must now necessarily extend to such a suit, beyond the limits of section 23 of the Bankruptcy Act (11 U.S.C.A. § 46), unless the purpose of Congress in enacting the reorganization provision is rendered futile."

In the case of Continental Illinois Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pacific R. Co., 294 U.S. 648, loc. cit. 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110, it was said:

"A proceeding under section 77 (11 U.S.C.A. § 205) is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile."

But, in the foregoing case, loc. cit. 681, 55 S.Ct. loc. cit. 608, Mr. Justice Sutherland states:

"It is next contended that the court was without power to issue the injunction in a summary proceeding. Obviously, an application for an injunction against the immediate enforcement of a remedy is not the assertion of an adverse claim."

In Robertson v. Labor Board, 268 U.S. 619, loc. cit. 627, 45 S.Ct. 621, loc. cit. 624, 69 L.Ed. 1119, Mr. Justice Brandeis said:

"By the general rule the jurisdiction of a District Court in personam has been limited to the district of which the defendant is an inhabitant or in which he can be found * * *. It is not lightly to be

assumed that Congress intended to depart from a long-established policy."

In Re Prudence Bonds Corporation Radin v. Chemical Bank & Trust Co., et al., 2 Cir., 75 F.2d 262, which was a case arising under Section 77B, 11 U.S.C.A. § 207, Judge Learned Hand says [page 263]:

" 'The jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved.'

"It is clear both from the language used in these subdivisions, and from the consequences of a contrary ruling, that Congress did not intend the bankruptcy court in proceedings under section 77B to take over all litigation between the debtor and third persons. Merely for argument we will assume that controversies are justiciable in such a proceeding to exactly the same extent as in bankruptcy stricti juris; that an 'adverse holder' whose claim is not colorable, may insist upon being sued elsewhere; and that if the debtor has an interest in a suit pending in a state court, it or its trustee must intervene."

In a recent case arising under section 77B, 11 U.S.C.A. § 207, United States et al. v. Tacoma Oriental Steamship Company, a corp., 9 Cir., 86 F.2d 363, the Court said [page 367]:

"It is true that 'Congress may authorize the civil process of a federal district court to be served upon persons in any other district.' Continental Ill. Nat. Bank & Trust Co. v. Rock Island Ry., 294 U.S. 648, 683, 55 S.Ct. 595, 79 L.Ed. 1110. The question presented, therefore, is: Has Congress authorized service of process of the lower court on persons in another district under the facts herein enumerated? * * *

"We believe that the act giving exclusive jurisdiction of the lower court over the debtor's property, wherever located, simply means that the res (the debtor's property) is to be considered solely under the jurisdiction of the lower court. Any wrongful invasion, interference, or disposition of that res is to be dealt with solely by the lower court. Jurisdiction over a person outside the lower court's jurisdiction, is given to the lower court, only if such person is in some manner invading, interfering, or disposing of the debtor's res, and then only to the extent of preventing or forestalling the invasion, interference or disposition of such res. The act gives no jurisdiction to the trial court to issue its process outside its district in proceedings purely in personam, in which no protection of the debtor's res is involved. We agree with the statement in Re Prudence Bonds Corporation (C.C.A.2) 75 F. 2d 262, 263, that 'It is clear both from the language used in these subdivisions [Section 77B(a) and (o), 11 U.S.C.A. § 207 (a, o)], and from the consequences of a contrary ruling, that Congress did not intend the bankruptcy court in proceedings under section 77B to take over all litigation between the debtor and third persons."

 It appears that Section 77, 11 U.S. C.A. § 205, is to be construed together with other parts of the Bankruptcy Act, 11 U.S. C.A. § 1 et seq.

 It is not believed that Congress by enacting Section 77 intended the bankruptcy court to take over all litigation between the debtor and third persons. In re Borok, 2 Cir., 50 F.2d 75.

 The conclusions reached make it unnecessary to discuss or determine the other points presented. It follows that the separate motions of these defendants to vacate the order for service of process and to quash the service of process should be sustained and it is so ordered.