344 F.Supp.2d 1194 (2004)
OFFICIAL PLAN COMMITTEE OF OMNIPLEX COMMUNICATIONS GROUP, LLC, Plaintiff,
v.
LUCENT TECHNOLOGIES, INC., Defendant.
No. 4:04CV00477 ERW.
United States District Court, E.D. Missouri, Eastern Division.
July 9, 2004.
Order Denying Stay September 14, 2004.
*1195 Aaron D. French, Jeffrey L. Dunn, John S. Sandberg, Kenneth J. Brennan, Mariquita L. Barbieri, Sandberg and Phoenix, St. Louis, MO, for Plaintiff.
K. Lee Marshall, Ketrina G. Bakewell, Louis F. Bonacorsi, Bryan Cave LLP, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER

WEBBER, District Judge.
Before the Court is Plaintiff's Motion to Abstain and Remand [doc. # 8]. For the foregoing reasons, that motion is granted.

I. Background
Omniplex Communications Group, LLC (Omniplex) was one of the first competitive local exchange carriers authorized by the Missouri Public Service Commission to provide commercial telecommunication services in Missouri. In July 2000, it entered into an agreement with Lucent Technologies (Lucent) for the design, engineering, installation, and support of Pathstar Access Servers and related products. After an alleged failure by Lucent to provide the agreed products and services under the terms of the contract, Omniplex suffered significant financial losses, resulting in its filing for a voluntary petition in bankruptcy for reorganization under Chapter 11 of the Bankruptcy Code on February 28, 2001. In March of that year, the United States Trustee appointed a committee of Omniplex's creditors (the Creditors Committee) to represent the interests of all of Omniplex's unsecured creditors. That committee is comprised of Southwestern Bell Telephone, L.P., Technology Applications, Inc., and MVP Communications, Inc.
On April 24, 2002, the United States Bankruptcy Court for the Eastern District of Missouri entered an order confirming the Joint First Amended Plan of Reorganization (Plan) filed by Omniplex and the Creditors Committee. The Plan created The Official Plan Committee of Omniplex Group, LLC (the Plan Committee) to conduct the post-confirmation liquidation of Omniplex, and appointed the following members: Dave J. Egan of SBC Industry Markets, Robert Steinberg of MVP Communications, Inc., Brent Hyde of Technology Applications, Inc., Michael McKay of Omniplex Communication Group, LLC, and The Disbursing Agent. Later, the Plan Committee designated John Vaclevec, CPA, of Williams Keepers as the Disbursing Agent.
In addition to creating the Plan Committee, the Plan provided that the Plan Committee would continue to operate with all the powers and rights of a debtor-in-possession under the Bankruptcy Code, vested all property of the bankruptcy estate in the Plan Committee, and gave the Plan Committee the powers of a bankruptcy trustee, as well as the exclusive right and authority to prosecute and defend all *1196 claims and causes of actions relating to the bankruptcy estate. Acting under its power to sue, the Plan Committee brought suit against Lucent in a Missouri state court for fraud. Lucent filed a notice of removal based on three separate grounds. First, it argued the parties were completely diverse, see 28 U.S.C. § 1331. Next, it claimed that removal was appropriate under 28 U.S.C. § 1452, which allows for removal whenever a district court would have jurisdiction over the claim under 28 U.S.C. § 1334. Finally, Lucent contended that removal was proper because the bankruptcy court expressly retained jurisdiction over this cause of action under the Plan.
The Plan Committee then filed the present motion to remand, arguing that the parties are not completely diverse, and since they are not, the Court should refuse to hear the case under the mandatory abstention statute, 28 U.S.C. § 1334(c)(2), or the permissive abstention statute, id. § 1334(c)(1). The Plan Committee also asks the Court to remand on prudential grounds under 28 U.S.C. § 1452(b).

II. Discussion
Removal to federal court is appropriate only if the Plaintiff could have filed suit in federal court originally. See 28 U.S.C. § 1441(b). Once a party moves to remand a removed action to state court, the party opposing remand has the burden of establishing federal subject matter jurisdiction. Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir.2002). The Court is required to resolve all doubts about federal jurisdiction in favor of remand. In re Business Men's Assurance Co. of America, 992 F.2d 181,183 (8th Cir.1993).

A. Diversity jurisdiction
Lucent is a citizen of both Delaware, because it is incorporated there, and New Jersey, where its principal place of business is located. 28 U.S.C. § 1332(c)(1). Consequently, if the Plan Committee is a citizen of either one of those states, diversity jurisdiction does not exist. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Omniplex is a Delaware Limited Liability Company whose sole member is Omniplex Communications Corporation, which is incorporated in Delaware. The Plan Committee argues that because it is acting as a debtor-in-possession after Omniplex assigned that power to it, Omniplex's citizenship is the relevant one for establishing jurisdiction. Because both Omniplex and Lucent are Delaware citizens, the Plan Committee argues, complete diversity is lacking.
Lucent, on the other hand, contends that the Plan Committee is more analogous to a bankruptcy trustee, and thus the individual citizenship of the members that represent the creditors on the Plan Committeeand not the citizenship of the creditors on the committeecontrol the Court's analysis. Since everyone agrees that the none of the individuals representing the companies on the Plan Committee are citizens of either Delaware or New Jersey, Lucent argues that the Court indeed does have diversity jurisdiction.
One problem with Lucent's position, even if the Court were to accept it, is that every court in the land has held that for diversity purposes, the citizenship of a bankruptcy trustee is the citizenship of the bankrupt or debtor, and not the citizenship of the trustee himself. Lucent correctly points out that the reasoning underlying this rule rests on a shaky foundation. The Supreme Court first announced the principle in Bush v. Elliott, 202 U.S. 477, 26 S.Ct. 668, 50 L.Ed. 1114 (1906), but it reached its conclusion by interpreting a statute that has now been repealed. In that case, bankruptcy trustees sued a man and his company to recover monies the two owed the debtor before the debtor filed for *1197 bankruptcy. Because one of the trustees had the same citizenship as the defendants, the trial court dismissed the suit for lack of jurisdiction. In reversing, the Supreme Court ruled that what was then section 23 of the Bankruptcy Act (and was later codified at 11 U.S.C. § 46) clearly dictated that bankruptcy trustees were allowed to sue in federal court in the jurisdiction in which the debtor would have been entitled to sue but for the bankruptcy proceedings. Id. at 483, 26 S.Ct. 668. Thus, under that construction of the statute, the Supreme Court ruled that the citizenship of the trustee was "wholly immaterial." Id. at 484, 26 S.Ct. 668.
With binding Supreme Court authority on the books, the courts of appeal followed the Bush decision. See, e.g., Clarkson Co. v. Shaheen, 544 F.2d 624, 627-28 (2d Cir. 1976). In 1978, however, Congress overhauled the federal bankruptcy law by passing the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598 § 401(a), 92 Stat. 2682 (codified in scattered sections of 11 U.S.C.) and repealed the jurisdictional provision upon which the Bush court relied. Nonetheless, at least one court of appeal and one district court recognize the current viability of the rule, see Carlton v. Baww, Inc., 751 F.2d 781, 787 (5th Cir.1985) and Jackson Nat'l Life Ins. Co. v. Grey cliff Partners, Ltd., 960 F.Supp. 186, 189 (E.D.Wis.1997), and the leading federal practice treatise treats the rule that the citizenship of the bankruptcy trustee is irrelevant as a general proposition. 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3606 (2d ed.1984).
The Court need not, however, decide whether the citizenship of the debtor or the citizenship of a hypothetical trustee controls in this case, because even assuming that the citizenship of each member of the Plan Committee must be examined, it is the corporation represented on the committee that matters, and not the corporation's representative. Lucent disagrees and compares the individuals representing the creditors on the committee to fiduciaries like an administrator of a decedent's estate, whose citizenship controls when he brings a suit on behalf of a deceased. The problem with Lucent's position is that a corporation can not act on its own. As a fictional entity created by statute, it must act through natural persons, such as directors, officers, or representatives. The Plan at issue here contemplated that the members of the Creditors Committee would be the members of the Plan. The order creating the Creditors Committee specified that the members of the committee were the corporations themselves. Of course, the corporation can not show up at a creditors' meeting without a person from the corporation representing it. It is not shocking, then, that individual members were named in the Plan. Unlike a personal representative, who is appointed because of a special skill or relationship to the deceased, the only reason an individual was appointed to the Plan Committee was because of his connection to the creditor corporation. To put it another way, if Michael Steinberg leaves the employ of MVP Communications, it would be inappropriate for him to remain on the Plan Committee, and the Plan Committee would have to find another member. To take this scenario one step further, suppose Michael Steinberg is a citizen of New Jersey. Under Lucent's view, if the Plan Committee filed suit against Lucent today, there would be no diversity jurisdiction because Lucent is a New Jersey citizen. If, however, Mr. Steinberg quit working for MVP Communications tomorrow and the company had to substitute someone else on the committee and that person had neither Delaware nor New Jersey citizenship, the Court would have diversity jurisdiction if a suit was filed after Steinberg quit. Thus, *1198 Lucent surmises that the citizenship of the Plan Committee rises and falls on the possible fluctuation of members of the committee. The Court disagrees. The real parties in interest in this case are the creditors not their representatives who are only representatives because corporations can not act alone. Here, because two of the creditors on the Plan Committee, namely Ominplex and Southwestern Bell Telephone, L.P. are, like Lucent, citizens of Delaware, this Court lacks diversity jurisdiction.

B. Abstention
This is an action involving a purely state-law issue, and no issues of bankruptcy law are implicated. Thus, both parties agree that this action is only "related to" a case under Title 11, and does not "arise in," or "arise under," a Title 11 case. Congress, however, has directed federal district courts to abstain from hearing statelaw claims where (1) the action could not have been heard in federal court but for the fact that it was related to a Title 11 case; and (2) an action is commenced, and can be timely adjudicated in a state court of competent jurisdiction. 28 U.S.C. § 1334(c)(2). Thus, while the Court has jurisdiction to hear the matter,[1] the Plan Committee argues that the Court must abstain from hearing the case under the mandatory abstention statute. In the alternative, it asks the Court to abstain "in the interest of comity with State courts or respect for State law" under 28 U.S.C. § 1334(c)(1). Finally, the Plan Committee asks the Court to apply 28 U.S.C. § 1452(b), which authorizes the Court to remand a case removed under § 1452(a) which in turn, authorizes removal of actions where district courts have jurisdiction under § 1334"on any equitable ground."
Lucent argues that abstention under either § 1334(c)(1) or 1334(c)(2) is inapplicable where the case has been removed under § 1452(a). Some courts have taken this position, reasoning that without a parallel state-court proceeding, there is nothing to abstain in favor of. See, e.g., In re Lazar, 237 F.3d 967, 981-82 (9th Cir.2001). A majority of courts, however, have rejected that position, ruling that the removed action was commenced in state court, and once remanded, could be timely adjudicated in state court. See, e.g., Christo v. Padgett (In re John Christo, Jr.), 223 F.3d 1324, 1331 (11th Cir.2000) (remarking that the majority position comports better with the text of § 1334(c)(2) as well as Congress's intent); Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 929 (5th Cir.1999) (noting that there is no textual support for the contrary view); Robinson v. Michigan Consol. Gas. Co., 918 F.2d 579, 584 n. 3 (6th Cir.1990).
This court agrees with the Fifth, Sixth, and Eleventh Circuits. The text of 28 U.S.C. § 1334(c)(2) mandates that this Court not hear a case where a state court action is commenced, the only basis for the Court's jurisdiction is § 1334, the case is "related to" a title 11 case, the matter can be timely adjudicated in state court, and the plaintiff makes a timely motion. The action was originally commenced in state court, and the only reason there is no pending state proceeding is that Lucent removed it to this Court. The matter can be timely adjudicated in state court upon remand from this Court. This Court does not read § 1334(c)(2) to require parallel proceedings, but merely that an action be *1199 commenced in state court. Since one was, the Court must abstain and remand the case.

III. Conclusion
Because the Court has rejected diversity as a basis for this Court's jurisdiction, the Court must abstain and remand the case to state court under 28 U.S.C. § 1334(c)(2).
Therefore,
IT IS HEREBY ORDERED that Plaintiffs Motion to Abstain and Remand [doc. # 8] is GRANTED. This case is hereby REMANDED to the Circuit Court for Saint Charles County.
IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.

MEMORANDUM AND ORDER ON MOTION TO STAY
This matter is before the Court upon Defendant's Lucent Technologies Inc.'s Motion to Stay the Court's Order Remanding Case [doc. # 30]. A hearing was held on September 3, 2004, and the Court heard arguments from the parties on the Motion.

I. BACKGROUND
Omniplex Communications Group, LLC ("Omniplex") was one of the first competitive local exchange carriers authorized by the Missouri Public Service Commission to provide commercial telecommunication services in Missouri. In July 2000, it entered into an agreement with Lucent Technologies ("Lucent") for the design, engineering, installation, and support of Pathstar Access Servers and related products. After an alleged failure by Lucent to provide the agreed products and services under the terms of the contract, Omniplex suffered significant financial losses, resulting it its filing for a voluntary petition in bankruptcy for reorganization under Chapter 11 of the Bankruptcy Code on February 28, 2001. In March of that year, the United States Trustee appointed a committee of Omniplex's creditors ("the Creditors Committee") to represent the interests of all of Omniplex's unsecured creditors.
On April 24, 2002, the united States Bankruptcy Court for the Eastern District of Missouri entered an order confirming the Joint First Amended Plan of Reorganization ("Plan") filed by Omniplex and the creditors Committee. The Plan created the Official Plan Committee of Omniplex Group, LLC (the "Plan Committee") to conduct the post-confirmation liquidation of Omniplex. Acting under its power to sue, the Plan Committee brought suit against Lucent in a Missouri state court for fraud. Lucent filed a notice of removal based on three separate grounds, arguing the parties were completely diverse, removal was appropriate under 28 U.S.C. § 1452, and that removal was proper because the bankruptcy court expressly retained jurisdiction over this cause of action under the Plan.
The Plan Committee then filed a motion to remand the case. In considering the motion to remand, the Court noted that both the Plan Committee and Lucent agree that this action is only "related to" a case under Title 11. In support of its motion to remand the case, the Plan Committee argued that the Court was required to abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(2). Lucent, however, argued that 28 U.S.C. § 1334(c)(2) was inapplicable. In considering the motion, the Court recognized that some courts have taken the position advocated by Lucent, but noted that a majority of courts have rejected Lucent's position. Ultimately, the Court adopted the majority view and found that § 1334(c)(2) mandated that this Court abstain from hearing the case. Pursuant to this decision, the Court entered an order remanding the case to state *1200 court on July 9, 2004 (the "Remand Order"). On August 4, 2004, Lucent filed a notice of appeal with the Eighth Circuit Court of Appeals.
Lucent subsequently filed the present Motion to stay the Court's Remand Order, arguing that a stay is required to protect Lucent's right to appeal the Court's decision to abstain and remand pursuant to 28 U.S.C. § 1334(c)(2). The Plan Committee opposes this motion, arguing that a stay is not appropriate because the Court's order is not appealable and this Court lacks jurisdiction to issue a stay.

II. DISCUSSION
In determining whether to grant or deny a stay, the Court must consider four factors: (1) whether the stay applicant has made a strong showing of likely success on the merits; (2) whether denying a stay will cause irreparable injury; (3) whether granting a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Rife v. Ashcroft, 374 F.3d 606, 615 n. 3 (8th Cir.2004).

A. Success on the Merits
To make a strong showing that it is likely to succeed on the merits, Lucent must first show that the Remand Order is appealable. Lucent maintains that the Remand Order is appealable and that this Court has jurisdiction to issue a stay. The Plan Committee disagrees, arguing that the Remand Order is not appealable and that this Court lost its jurisdiction to issue any further orders in this case when it remanded the case to the state court.
28 U.S.C. § 1334 governs bankruptcy proceedings and dictates the circumstances under which a district court may or must abstain from hearing certain kinds of claims. Under § 1334(c)(1), any abstention decision is considered discretionary and is therefore reviewable. See S.G. Phillips v. City of Burlington, 45 F.3d 702, 708 (2nd Cir.1995). However, abstention decisions made pursuant to § 1334(c)(2) are mandatory. Id. As the Court noted in its Remand Order, the text of § 1334(c)(2) mandates that a district court not hear a case where a state court action is commenced, the only basis for the court's jurisdiction is § 1334, the case is "related to" a title 11 case, the matter can be timely adjudicated in state court, and the plaintiff makes a timely motion. In its Remand Order, the Court stated that its abstention decision was mandated by § 1334(c)(2). Under 28 U.S.C. § 1334(c)(2) "any decision to abstain or not to abstain ... is not reviewable by appeal or otherwise." 28 U.S.C. § 1334(d). As explained more fully below, the Court has been presented with no clear exception to this statutory prohibition.
Lucent argues that, because the Remand Order is an abstention-based order, it is appealable. Further, Lucent maintains that some courts have specifically recognized a limited right to appeal § 1334(c)(2) abstention decisions, despite the clear statutory language prohibiting such appeals. First, to support its claim that abstention-based orders are appealable, Lucent points to cases supporting the proposition that an abstention-based remand order is appealable as a final order under 28 U.S.C. § 1291. See, e.g., Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Cases such as Quackenbush, however, are distinguishable in that they involve discretionary remand orders; as already explained, a remand order under § 1334(c)(2) is mandatory.
Lucent argues that this distinguishing fact does not affect the reviewability of the remand order. In making this argument, Lucent points to two cases which it asserts establish that § 1334(c)(2) decisions are *1201 subject to limited review, despite the statutory prohibition against review. First, Lucent points to S.G. Phillips Constructors, Inc., v. City of Burlington, 45 F.3d 702 (2nd Cir. 1995), a bankruptcy proceeding case. In S.G. Phillips, the bankruptcy court had dismissed a certain claim, and that decision was appealed to the district court. The district court found that the bankruptcy court lacked jurisdiction over the claim because the claim was not a "core" claim under 28 U.S.C. § 157(b)(2) and ultimately concluded that the bankruptcy court lacked jurisdiction pursuant to the mandatory abstention rule. Id. at 704. The Second Circuit determined that the district court was incorrect and that the bankruptcy court did in fact have "core" jurisdiction over the claim. Id. at 706. The Second Circuit determined that, because "abstention is only mandated with respect to non-core matters," any abstention decision could only have been made pursuant to § 1334(c)(1), which leaves abstention in the court's discretion. Id. at 708. Because the claim did involve a "core" matter, the mandatory § 1334(c)(2) abstention rule could not apply. Id, In reaching this conclusion, the court noted that "[w]hile Congress proscribed general review of mandatory abstention, we have recognized limited reviewability of abstention decisions under § 1334(c)(2) to ensure that the statutory requirements prerequisite to mandatory abstention are met." Id.
Although the court in S.G. Phillips did review a remand order that had been made pursuant to 1334(c)(2), it did so only after concluding that the district court had incorrectly determined the claim to be "non-core," when it was, in fact, "core." The court's statement regarding the limited reviewability of abstention decisions under § 1334(c)(2) appears to relate to its ability to determine whether the claim is "core," and therefore subject to the mandatory abstention rule, or whether it is "non-core," and therefore not subject to the mandatory rule. The parties in the instant case have agreed that this action is only "related to" a case under Title 11 and that it is therefore not a "core" proceeding, eliminating the need to review any "core" versus "non-core" determination. There is no indication that the limited reviewability discussed by the S.G. Phillips court extends to the type of review that Lucent seeks here.
In further support of its claim that the Remand Order is appealable, Lucent points to Xiong v. State of Minnesota, 195 F.3d 424 (8th Cir.1999), a case in which a certain claim was remanded to the state court. On appeal, the plaintiffs argued that 28 U.S.C. § 1447(d) foreclosed review by the Eighth Circuit. The court acknowledged this general bar to review, but noted that "[w]hen a district court remands a properly removed case on grounds the court lacks authority to consider ... § 1447(d) does not bar review." Xiong at 426. According to the Eighth Circuit, "the district court ignored ... controlling precedent and made its own directly conflicting determination that removal was improper." Id. Because the district court made the remand decision contrary to controlling precedent, the Eighth Circuit determined that it could review the order. Lucent argues that the Eighth Circuit will make a similar exception in the instant case, making it likely the Eighth Circuit will review the Remand Order. However, as with Quackenbush and S.G. Phillips, this case is distinguishable in that the remand decision in the instant case was made in accordance with the statutory requirements and was not made contrary to any controlling precedent.
The clear language of § 1334(d) indicates that Congress intended § 1334(c)(2) abstention decisions to be non-reviewable. *1202 Further, because a decision to abstain necessarily includes a decision to remand, 1334(d)'s prohibition against reviewability applies to both the decision to abstain and the decision to remand. The Court can find no clear exception to this prohibition and must therefore conclude that the Remand Order is not appealable.[1]
Even if Lucent could make a strong showing that the Remand Order is appealable, it would still have to demonstrate its likely success on appeal. Lucent argues that it is likely to succeed on its appeal because the Eighth Circuit will agree with its position that this Court was not required to abstain and remand the case pursuant to 28 U.S.C. § 1334(c)(2). The Plan Committee maintains that this Court's determination that it must abstain pursuant to § 1334(c)(2) was correct and that Lucent therefore will not succeed on appeal. Because the Court has determined that the Remand Order is not appealable, it need not reach this argument. The Court notes, however, that Lucent has presented nothing which changes the Court's previous conclusion that abstention under § 1334(c)(2) is proper. Because the statutory requirements for abstention under § 1334(c)(2) were met, Lucent is unlikely to prevail on the merits even if the Remand Order is found to be appealable.

B. Remaining Factors: Harm to the Parties and the Public Interest
The remaining Rife factors also counsel against a stay in this case. Lucent will not be irreparably injured absent a stay because the Remand Order is not reviewable; and, even if the Remand Order is found to be reviewable by the Eighth Circuit, Lucent is unlikely to prevail on the merits of such an appeal. Further, the issuance of a stay would cause an unnecessary time delay in the adjudication of this case.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Stay the court's Order Remanding Case [doc. # 30] is DENIED.
NOTES
[1] 28 U.S.C. § 1452(a), in conjunction with 28 U.S.C. § 1334(b), authorizes the removal to federal district court of cases that either arise under the Bankruptcy Code, or are related to cases that arise under the Code.
[1] Given this Court's conclusion that the Remand Order is not appealable, the Court also notes that it agrees with The Plan that it has lost jurisdiction to issue a stay order in this case. See Browning v. Navarro, 743 F.2d 1069, 1078 (5th Cir.1984) ("It is axiomatic that remanding a case to state court terminates the jurisdiction of a federal bankruptcy or district court over that case."); Federal Deposit Insurance Corp. v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir. 1979) ("The law in this circuit is clear that once a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action."). In support of its assertion that this Court does have jurisdiction to stay its own order, Lucent points to several cases. See, e.g., Hudson United Bank v. LiTenda Mortgage Corp., 142 F.3d 151 (3rd Cir. 1998) (mailing of a remand order did not divest district court of jurisdiction to consider a motion for reconsideration after it remanded pursuant to § 1367(c)); Thomas v. LTV Corp., 39 F.3d 611 (5th Cir. 1994) (discretionary remand orders are reviewable either by the district court or on appeal and the district court therefore retains jurisdiction). The Court notes that cases such as these involve discretionary remand orders. These cases support the proposition that a district court retains jurisdiction over its discretionary remand orders, but do nothing to refute The Plan's contention that the Court loses jurisdiction after making a mandatory remand order.